# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| Sharon Walker, | ) |
| Plaintiff, | ) Civil Action No.: 3:17-cv-01586-JMC |
| v. | ) **ORDER AND OPINION** |
| DDR Corp., BRE DDR Harbison Court LLC, Joe Doe No. 1, John Doe No. 2, John Doe Company No. 1, Joe Doe Company No. 2, Joe Doe Company No. 3, | ) |
| Defendants. | ) |
| BRE DDR Harbison Court LLC, | ) |
| Third-Party Plaintiff, | ) |
| v. | ) |
| Coffelt Consolidated Holdings Inc., *d/b/a* Elite Sweeping Service, | ) |
| Third-Party Defendant. | ) |

This matter is before the court for review of DDR Corp. and BRE DDR Harbison Court LLC's (collectively, "Defendants") Motion for Summary Judgment filed on July 20, 2018. (ECF No. 44.) On August 3, 2018, Plaintiff Sharon Walker ("Plaintiff") filed her Memorandum in Opposition to Defendants' Motion for Summary Judgment. (ECF No. 51.) After several evidentiary rulings (ECF Nos. 96, 103), the court required the parties to provide supplemental pleadings concerning Defendants' Motion. (ECF No. 105.) The parties completed their supplemental briefing on February 19, 2019. (ECF Nos. 111, 119, 121.) On February 21, 2019, the court heard arguments from both parties about Defendants' Motion. (ECF No. 123.) For the

reasons set forth herein, the court **DENIES** Defendants' Motion for Summary Judgment (ECF No. 44).

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 19, 2014, Plaintiff used a parking lot, owned, maintained, and managed by Defendants, in Columbia, South Carolina. (ECF No. 1-2 at 4 ¶ 10.) While using the parking lot, Plaintiff, allegedly, stepped into a hole between a water meter lid and the parking lot's surface. (*Id.*) Plaintiff maintains that she "fell violently to the ground and sustained serious injuries to her right knee." (*Id.* at 4 ¶ 11.) Plaintiff specifically testifies as follows: "all of a sudden I stepped in a hole, twisted my ankle[,] and fell on the pavement." (ECF No. 51-1 at 2.) Purportedly, Plaintiff "hit [her] right knee on the pavement." (*Id.* at 5.) Plaintiff's husband, Ed Walker ("Mr. Walker"), took a photograph, using his cell phone, of the pertinent area of the parking lot minutes after the accident, which shows the water valve covered by the shadow of Plaintiff's vehicle. (ECF No. 119 at 3.) Mr. Walker testifies that "you could see the hole where she twisted her ankle or where the pavement sunk in." (ECF No. 119-1 at 2.) After the fall, Plaintiff reported the accident to an employee at Fast Signs, a tenant of Defendants, and a cone was later placed over the water valve cover. (ECF No. 51-1 at 6; ECF No. 120-4 at 11.) Because of the purported accident, DDR property manager Lisa Nesbitt ("Nesbitt") prepared an incident report and e-mailed Greg Coffelt ("Coffelt"), the principal of the third-party Defendant, about the accident. (ECF No. 66-1 at 2; ECF No. 66-4 at 1.) Since the fall, Plaintiff has allegedly "endured extensive medical treatment, including surgery and the implant of a spinal cord stimulator to treat those injuries," and cannot return to her job as a pharmacist. (ECF No. 119 at 4.) The parking lot was repaved after Plaintiff's accident, but before she filed the instant lawsuit. (ECF Nos. 43, 55.)

After initially filing her Complaint in the Richland County Court of Common Pleas on May

9, 2017, Defendants removed the case to the United States District Court for the District of South Carolina on June 16, 2017. (ECF Nos. 1, 1-1, 1-2.) Plaintiff's action is brought pursuant to the laws of negligence in South Carolina. (ECF No. 1-2.) Plaintiff's first cause of action alleges that Defendants were negligent in the maintenance of their own premises, while her second cause of action submits that Defendants were negligent in the hiring, training, supervision, and retention of its employees and contractors. (*Id.* at 5, 7.)

Importantly, on April 26, 2018, the parties deposed Nesbitt. (ECF No. 51-3.) Nesbitt testifies that Defendants consider "an uneven surface" to constitute a trip-and-fall hazard. (*Id.* at 13.) She further testifies that the accident area "was maybe not completely flush" and admits, on behalf of Defendants, that the water valve's surface was a trip-and-fall hazard by their own, self-imposed standards. (*Id.* at 12–14.) Moreover, Nesbitt admits that the water valve cover "was not completely level," but should have been level with the surrounding asphalt. (ECF No. 120-4 at 2–3.) She testifies that there were no efforts to ensure that the water valve cover was level with the surrounding pavement. (ECF No. 51-3 at 10.) Nesbitt also admits that the condition of the area where Plaintiff fell needed to be reported to Defendants as a safety hazard, but it was not. (*Id.* at 9–10.) Lastly, Nesbitt affirms that the accident area was redeveloped after Plaintiff's accident as part of a re-development project. (*Id.* at 17.)

Defendants filed their Motion for Summary Judgment on July 20, 2018. (ECF No. 44.) Defendants supplemented their Motion on January 28, 2019, after several evidentiary rulings by the court. (ECF No. 111.) Defendants first contend that, in light of the court's exclusion of Plaintiff's expert (ECF No. 96), Plaintiff's "claim must now fail as a matter of law for want of a duty." (*Id.* at 3.) Second, Defendants maintain that because the condition of the water valve "was neither latent nor hidden, but rather open and obvious, summary judgment should be granted in

3

[their] favor." (*Id.* at 5.) Lastly, Defendants submit that "Plaintiff has failed to show that Defendants breached a legal duty," and "[e]xpert testimony is necessary to establish the existence of a dangerous condition because[] the determining factor for dangerousness . . . is the depth of the valve cover." (*Id.* at 5, 7.) Defendants specifically argue that the water valve cover was not "inherently dangerous" unless "[] it violates a prevailing code or standard." (*Id.* at 7.) In other words, Defendants vigorously argue that the exclusion of Plaintiff's expert means that "Plaintiff cannot provide any testimony that establishes any evidence of a deviation from the standard of care occurred." (*Id.* at 8.)

On August 3, 2018, Plaintiff filed her Memorandum in Opposition to Defendants' Motion for Summary Judgment. (ECF No. 51.) Similar to Defendants, Plaintiff supplemented her Memorandum in Opposition on February 11, 2019, after several evidentiary rulings by the court. (ECF No. 119.) First, as it relates to whether the water valve's depression allegedly caused her injuries, Plaintiff emphasizes that, even without her expert, "the evidence of record creates a genuine issue of material fact as to the existence of a hazardous defect" because Defendants allegedly provided an "admission that the area was a tripping hazard[] and constituted a defect in their parking lot . . . ." (*Id.* at 8.) Moreover, Plaintiff argued that industry standards are not dispositive for defining the appropriate standard of care, which Defendants seem to imply and presume. (*Id.* at 9–10.) As it concerns whether the alleged defect was open and obvious, Plaintiff contends that "the valve cover that caused [her] fall was the same color as the surrounding asphalt and painted area of the parking lot and fell within the shadow of [her] vehicle at the time of the incident." (*Id.* at 12.) Even if the condition of the water valve was open and obvious, Plaintiff alleges that Defendants "were on actual or constructive notice of the dangerous condition in light of their past inspections of the property" and should have anticipated the harm because of their

4

alleged admissions and inspections, management, and ownership of the parking lot. (*Id.* at 13–17.) Lastly, Plaintiff argues that Defendants' "failure to preserve and alteration of evidence" support "an inference that Defendants knew that they would likely be exposed to legal liability from the incident," which further warrants the denial of summary judgment. (*Id.* at 18–19.)

The court heard arguments from both parties on February 21, 2019. (ECF No. 123.) Defendants stressed that the exclusion of Plaintiff's expert warrants summary judgment because she cannot show the breach of a duty. Plaintiff, on the other hand, pointed to evidence which still shows a breach of a duty and liability on the part of Defendants. Because this matter has been extensively briefed and argued, it is now ripe for the court's review. *See generally Sauls v. Wyeth Pharm., Inc.*, 846 F. Supp. 2d 499, 501 (D.S.C. 2012) ("The parties have fully briefed the issues, and this matter is ripe for consideration.").

## II. LEGAL STANDARD

A federal court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). In a summary judgment motion, "[a] court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)). In other words, "[a]t the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a

'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing FED. R. CIV. P. 56(c)). Nevertheless, "the nonmoving party . . . must offer some 'concrete evidence from which a reasonable juror could return a verdict in his [or her] favor.'" *Williams v. Genex Servs., LLC*, 809 F.3d 103, 109 (4th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). Summary judgment is therefore appropriate "when the nonmoving party has the burden of proof on an essential element of her case and does not make, after adequate time for discovery, a showing sufficient to establish that element." *Id.* (citing *Celotex Corp.*, 477 U.S. at 322–23).

At the summary judgment stage, a factual dispute raised by a non-moving party must be "genuine" and "material." *See* FED. R. CIV. P. 56(a). To determine if a fact is "material," a federal court is guided by the substantive law at issue, which will identify the facts that are material and those that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. The United States Supreme Court has instructed that the substantive law identifies "which facts are critical and which facts are irrelevant . . . ." *Id.* Put simply, "[a] fact is 'material' if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case." *Agee v. Wayne Farms LLC*, C/A Nos. 2:07cv1010–KS–MTP, 2:07cv1011–KS–MTP, 2008 WL 5398743, at *1 (S.D. Miss. Dec. 19, 2008) (citing *Anderson*, 477 U.S. at 248). *See generally Polycast Tech. Corp. v. Uniroyal, Inc.*, 792 F. Supp. 244, 249 (S.D.N.Y. 1992) ("While the party resisting summary judgment must show a dispute of fact, it must also be a material fact in light of the substantive law."); *Allstate Ins. Co. v. Shockley*, 793 F. Supp. 852, 854 (S.D. Ind. 1991) ("Moreover, the mere existence of a factual dispute is not by itself sufficient to bar summary judgment; the disputed fact must be outcome determinative." (citations omitted)). A fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The mere existence of "some alleged factual

dispute" is insufficient to defeat a well-supported summary judgment motion. *Anderson*, 477 U.S. at 247–48. "A dispute over irrelevant or unnecessary facts will not preclude summary judgment, but the presence of unresolved factual issues that are material to the outcome of the litigation mandates a denial of summary judgment." *GSGSB, Inc. v. N.Y. Yankees*, 862 F. Supp. 1160, 1170 (S.D.N.Y. 1994) (citations omitted). *See also Anderson*, 477 U.S. at 249–50 (stating that summary judgment may be granted when the evidence is merely "colorable" or "not significantly probative").

### III. DISCUSSION

**A. <u>Plaintiff's Negligence Claim</u>**

i. *<u>Negligence and Premises Liability Under South Carolina Law</u>*

Under South Carolina law,[1] in order to prevail in a negligence action, a plaintiff must show the following: "(1) the defendant owes a duty of care to the plaintiff, (2) the defendant breached the duty by a negligent act or omission, (3) the defendant's breach was the actual and proximate cause of the plaintiff's injury, and (4) the plaintiff suffered injury or damages." *Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 638 S.E.2d 650, 656 (S.C. 2006). *See generally Fowler v. Hunter*, 697 S.E.2d 531, 534 (S.C. 2010) ("To establish a cause of action in negligence, a plaintiff must prove the following three elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damages proximately resulting from the breach

---

[1] As decided by the court's Order and Opinion from January 4, 2019, this court possesses diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). (ECF No. 90.) Because the court sits in diversity jurisdiction, it must apply the substantive law of the state in which it sits, which is South Carolina. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). *See generally Johnson v. Hugo's Skateway*, 974 F.2d 1408, 1416 (4th Cir. 1992) ("The principles of [*Erie*] require a federal court in a diversity case to respect and enforce state-created rights in a manner such that litigation of state-based rights in federal court does not yield results materially different from those attained in the state courts. . . . Generally, then, federal courts applying state-created law are still to conduct those trials under federally established rules of procedure.").

of duty." (citing *Bloom v. Ravoira*, 529 S.E.2d 710, 712 (S.C. 2000))). Generally, "[t]he owner of property owes to an invitee or business visitor the duty of exercising reasonable or ordinary care for his safety, and is liable for injuries resulting from the breach of such duty." *Sims v. Giles*, 541 S.E.2d 857, 863 (S.C. Ct. App. 2001). South Carolina courts have routinely held that the existence of a legal duty is a question of law for a court and not one of fact for a jury. *See Doe v. Greenville Cty. Sch. Dist.*, 651 S.E.2d 305, 309 (S.C. 2007); *Doe v. Batson*, 548 S.E.2d 854, 857 (S.C. 2001); *Nelson v. Piggly Wiggly Cent., Inc.*, 701 S.E.2d 776, 779 (S.C. Ct. App. 2010). Most recently, the South Carolina Supreme Court opined as follows: "In a given case, a court may establish and define the standard of care by looking to common law, statutes, administrative regulations, industry standards, or a defendant's own policies and guidelines." *Roddey v. Wal-Mart Stores E., LP*, 784 S.E.2d 670, 675 (S.C. 2016) (emphasis added) (citation omitted). *See generally Madison ex rel. Bryant*, 638 S.E.2d at 659; *Kennedy v. Columbia Lumber & Mfg. Co., Inc.*, 384 S.E.2d 730, 738 (S.C. 1989).

As it specifically concerns a premises liability case under South Carolina law, the South Carolina Supreme Court has enunciated the following:

> To recover damages for injuries caused by a dangerous or defective condition on a storekeeper's premises, the plaintiff must show either (1) that the injury was caused by a specific act of the defendant which created the condition; or (2) that the defendant had actual or constructive knowledge of the dangerous condition and failed to remedy it.

*Wintersteen v. Food Lion, Inc.*, 542 S.E.2d 728, 729 (S.C. 2001) (citations omitted). The owner of a premises "is not required to maintain the premises in such condition that no accident could happen to a patron using them." *Denton v. Winn-Dixie Greenville, Inc.*, 439 S.E.2d 292, 293 (S.C. Ct. App. 1993) (citations omitted). Instead, "the owner of property owes business visitors or invitees the duty of exercising reasonable and ordinary care for their safety and is liable for any

injuries resulting from a breach of such duty." *Scott v. Cedar Fair Entm't Co.*, C/A No. 0:11–00910–MBS, 2012 WL 5306222, at *3 (D.S.C. Oct. 26, 2012) (citing *H.P. Larimore v. Carolina Power & Light*, 531 S.E.2d 535, 538 (S.C. Ct. App. 2000)). A landowner has a duty to warn an invitee of only latent or hidden dangers of which the landowner is on actual or constructive notice. *See H.P. Larimore*, 531 S.E.2d at 538 (citing *Callander v. Charleston Doughnut Corp.*, 406 S.E.2d 361, 362–63 (S.C. 1991)). When a danger is open and obvious, a landowner cannot be held liable because they lack the "superior knowledge" of a danger that may cause an injury. *Id.* at 540. Put differently, the owner of a premises "is not liable for open and obvious dangers unless the landowner 'should anticipate the harm despite such knowledge or obviousness' or 'has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, . . . or fail to protect himself against it.'" *Scott*, 2012 WL 5306222, at *4 (quoting *Callander*, 406 S.E.2d at 362–63). In some instances, whether a condition is an "open an obvious hazard," may be a question for a jury under South Carolina law if there is "competing evidence on th[e] issue." *See Padgett v. Colleton Cty.*, 679 S.E.2d 533, 536–37 (S.C. Ct. App. 2009).

    ii. *The Open and Obvious Nature of the Water Valve*

Defendants vigorously argue that the condition of the water valve "was neither latent nor hidden, but rather open and obvious," which warrants summary judgment in their favor. (ECF No. 111 at 5.) Interpreting all rational inferences in the light most favorable to Plaintiff and any factual disputes in her favor, there is a genuine dispute of material fact concerning whether the water valve was an open and obvious danger at the time of Plaintiff's fall. First, Plaintiff presents a photograph, which was taken by Mr. Walker shortly after the accident, showing that the water valve is covered by the shadow of Plaintiff's vehicle, and she specifically argues that "the valve cover . . . fell within the shadow of [her] vehicle at the time of the incident." (ECF No. 119 at 3, 12.) There is also an

9

e-mail from Nesbitt mentioning that Plaintiff's car forecasted a shadow over the alleged defective area. (ECF No. 51-4 at 1.) In *Bruno v. Pendleton Realty Co.*, the Supreme Court of South Carolina found that there was a triable jury issue when a plaintiff tripped on a raised sidewalk, specifically where the sidewalk joined a walkway at a different level. 124 S.E.2d at 581–82. In that case, there was evidence that "a heavy growth of grass overlapp[ed] the sidewalk to such an extent that the curb thereof was concealed." *Id.* at 583. Similar to the plaintiff in *Bruno*, Plaintiff presents sufficient evidence to warrant the denial of summary judgment because she specifically testifies that she did not see the water valve cover prior to her fall, and, coupled with Nesbitt's e-mail, a photograph shows that the water valve cover was possibly "concealed" during the time of her accident. (ECF No. 51-1 at 4–5; ECF No. 51-4 at 1; ECF No. 119 at 3.) Plaintiff specifically states that her fall happened "all of a sudden," which further supports a reasonable inference that the area was concealed from her view. (ECF No. 51-1 at 2.) Based upon the evidence presented by Plaintiff and as it relates to the open and obvious dispute, "a reasonable juror could return a verdict" in her favor. *Williams*, 809 F.3d at 109 (quoting *Anderson*, 477 U.S. at 256).

Defendants tenuously rely upon *Scott v. Cedar Fair* in advocating for summary judgment in their favor. (ECF No. 111 at 4 (citing *Scott*, 2012 WL 5306222, at *6).) However, *Scott* is noticeably distinguishable to the case at hand. In *Scott*, a plaintiff "was walking on a 'beautiful, sunny day' and tripped over an elevated concrete pad, which pad was not obscured by darkness or alleged to have been covered by foliage or any other material concealing it from view." 2012 WL 5306222, at *6. Here, although Plaintiff testifies that the day of accident was "sunny" and during the "afternoon" (ECF No. 43-3 at 1–2), she also testifies that she did not remember seeing the water valve earlier that day or prior to her fall. (ECF No. 51-1 at 4–5.) Additionally, Mr. Walker allegedly took a photograph of the water valve cover shortly after Plaintiff's fall. (ECF No. 51-1

at 3; ECF No. 119 at 3.) The provided photograph shows that the water valve cover is visibly obscured and shrouded by the shadow of Plaintiff's car. (ECF No. 119 at 3.) Unlike the facts in *Scott*, where the pad "was not obscured by darkness or alleged to have been covered by foliage or any other material concealing it from view," there is direct evidence that the water valve cover was hidden by the shadow of Plaintiff's car in the form of testimony and a photograph, which creates a genuine issue of material fact about the open and obvious nature of water valve cover. (ECF No. 51-1 at 3; ECF No. 119 at 3.) Additionally, there is also an e-mail from Nesbitt in which she asks Coffelt whether he could recall if a woman's car "basically cast a shadow over the parking lot where an uneven drain cap was . . . ." (ECF No. 51-4 at 1.) Importantly, Defendants decline to specifically respond to this repeated assertion by Plaintiff (ECF Nos. 44, 111). *See Padgett*, 679 S.E.2d at 537 ("Although Padgett submitted the photograph, he also asserted in his brief the photograph showed the hold was partially covered, and we find it significant that the County did not respond to this assertion."). Defendants' reliance upon *Scott* is misplaced.

While "[t]he mere fact that there is a difference between the levels in the different part of the premises does not, in itself, indicate negligence," this is a case in which there is evidence, specifically from the photograph taken shortly after the accident and depositions, that "a reasonably careful person would not be likely to expect or see" the shrouded water valve cover. *Bruno*, 124 S.E.2d 582. Within their pleadings. Defendants do not address the notion of the water valve cover being hidden by the shadow of Plaintiff's car. (*See* ECF Nos. 44, 111.) Like the *Padgett* court, it is "significant" that Defendants fail to respond to this specific assertion from Plaintiff. 679 S.E.2d at 537. For these reasons, there is a genuine dispute of material fact whether the water valve's depression is open and obvious, which compels the court to deny Defendants' Motion in this regard.

iii. *Defendants' Breach of the Duty of Care*

With the exclusion of Dr. Durig from trial, Defendants suggest that Plaintiff cannot show a "want of a duty" or an appropriate standard of care. (ECF No. 111 at 3.) Additionally, in Dr. Durig's absence, Defendants further submit that Plaintiff cannot show that they breached a duty of care because she does not have any evidence showing that they violated the relevant industry standards. (*Id.* at 5–8.) For these reasons, Defendants argue that summary judgment is warranted in their favor. (*Id.*)

As an initial matter, whether a party *owes a legal duty* to another is a question of law for a court under settled South Carolina law. *See Doe*, 651 S.E.2d at 309; *Batson*, 548 S.E.2d at 857; *Nelson*, 701 S.E.2d at 779. Moreover, "*a court may establish and define the standard of care* by looking to *common law*, statutes, administrative regulations, *industry standards*, or *a defendant's own policies and guidelines*." *Roddey*, 784 S.E.2d at 675 (emphasis added) (citation omitted). Defining the standard of care under South Carolina law is the job of the court and not the parties. *See Doe*, 651 S.E.2d at 309; *Batson*, 548 S.E.2d at 857; *Nelson*, 701 S.E.2d at 779. Accordingly, to the extent that Defendants argue *that Plaintiff is required* to define the legal duty or standard of care, their argument is without legal merit.

As it relates to whether Plaintiff can show *a breach of a legal duty* to survive summary judgment, that is a wholly different matter. Defendants essentially contend that Dr. Durig's exclusion means that Plaintiff cannot show a breach of the relevant industry standards. (ECF No. 111 at 5–8.) As appropriately pointed out by Plaintiff, Defendants' argument rests upon an underlying assumption—that industry standards are the only way for Plaintiff to establish a breach of a legal duty or standard of care. (*See id.*; ECF No. 119 at 8–10.) To the contrary and as noted above, a legal duty and standard of care *can also* be breached upon review of the common law,

industry standards, or a party's own policies and guidelines. *See Roddey*, 784 S.E.2d at 675. In Nesbitt's deposition, she states that Defendants consider a trip-and-fall hazard to be "anything that is, when you're walking the parking lot, you could see somebody potentially . . . tripping and falling. . . . In the parking lot it could be an uneven surface." (ECF No. 51-3 at 13.) Drawing all reasonable inferences in the light most favorable to Plaintiff, when asked whether Defendants would consider the water valve cover's area a trip-and-fall hazard, Nesbitt, an employee of Defendants, unequivocally replied with "sure," which could reasonably indicate a violation of Defendants' own internal guidelines. (*Id.* at 13–14.) She also testified that, as the property manager, she was not aware of any efforts to "ensure that the surface of the valve cover where [the] incident occurred was level with the surrounding pavement prior to the time of the incident." (*Id.* at 10.)

Adding to these admissions, Nesbitt testified earlier that it is possible that the accident area "*was maybe not completely flush*," and later testified that the valve cover was inspected to determine *that it was flush* with the surrounding pavement. (*Id.* at 13, 20.) When confronted with an issue such as this, the court is precluded from making any credibility determination or weighing the evidence. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The inconsistency with Nesbitt's testimony is a credibility question that rests within the sole province of a jury. *See generally Shaw v. Stroud*, 13 F.3d 791, 804 (4th Cir. 1994) ("[T]he credibility of a deposition is a question for the jury rather than an issue to be settled at the summary judgment stage." (citing *Summerlin v. Edgar*, 809 F.2d 1034, 1039 (4th Cir. 1987)); *Pagani v. Modus eDiscovery*, C/A No. 3:16-CV-00024-GCM, 2017 WL 1205075, at *3 (W.D.N.C. Mar. 30, 2017) ("Dispositions of matters turning on credibility may only be determined by the trier of fact."); *Apulent, Ltd. v. Jewel Hosp., Inc.*, C/A No. C14-637RSL, 2015 WL 11601706, at *3 (W.D. Wash.

13

Apr. 8, 2015) ("Credibility determinations are solely the province of the jury . . . ."). A juror who found that Nesbitt *lacked credibility about whether the water valve area was flush* with the surrounding pavement could reasonably find that Defendants were negligent in their maintenance of the water valve's area. (ECF No. 51-3 at 13, 20.) *See also TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1158 (Fed. Cir. 2004) ("[S]ummary judgment is not appropriate where the opposing party offers specific facts that call into question the credibility of the movant[']s witnesses." (citations omitted)). The issue of Nesbitt's credibility regarding the flushness issue is best left to a jury and not the court. *See Apulent, Ltd.*, 2015 WL 11601706, at *3.

Thus, while Plaintiff may not have evidence of whether Defendants' violated the applicable industry standards because of Dr. Durig's exclusion, there is a genuine dispute of a material fact as it relates to whether Defendants breached or violated *their own, self-imposed policies and/or guidelines*, which are relevant to defining the appropriate legal duty and standard of care. *See Roddey*, 784 S.E.2d at 675. Accordingly, the admissions of Defendants provide "concrete evidence from which a reasonable juror could return a verdict" in Plaintiff's favor. *Williams*, 809 F.3d at 109 (quoting *Anderson*, 477 U.S. at 256). The court is, therefore, compelled to deny Defendants' Motion.

**B. <u>Plaintiff's Negligent Hiring, Training, Supervision, and Retention Claim</u>**

Within Plaintiff's Amended Complaint, she also brings a claim against Defendants for negligent hiring, training, supervision, and retention. (ECF No. 1-2 at 7.) Neither of the parties have explicitly briefed this claim as it relates to Defendants' Motion, and there is no indication that Plaintiff has affirmatively abandoned this claim. (*See* ECF Nos. 44, 60, 111, 119, 121.) Because Defendants have failed to challenge Plaintiff's claim for negligent hiring, training,

supervision, and retention and the matter has not been directly briefed, this claim does not warrant the entry of summary judgment. *See generally Viacom Int'l Inc. v. IJR Capital Investments, LLC*, 242 F. Supp. 3d 563, 575–76 (S.D. Tex. 2017) ("Further, Viacom did not brief these [remaining] claims in its motion. Because these claims were not briefed in the motion, the court need not address them at this time." (citations omitted)); *McCollough v. Minn. Lawyers Mut. Ins. Co.*, C/A No. CV 09–95–BLG–RFC–CSO, 2013 WL 823411, at *9–10 (D. Mont. Mar. 6, 2013) (holding that a party "failed to meet its initial burden under Rule 56" when it did not address one of the opposing party's claims); *Donovan v. Bishop*, C/A No. 1:09–cv–275–WTL–TAB, 2010 WL 4062370, at *3 (S.D. Ind. Oct. 14, 2010) ("Although the Defendant purportedly moved for summary judgment on all of Donovan's claims, his brief does not discuss Count II. . . . This is not enough to justify granting summary judgment in his favor."). As such, this claim may proceed to trial.

## IV. CONCLUSION

After careful consideration of Defendants' Motion (ECF No. 44), Plaintiff's Memorandum in Opposition (ECF No. 51), the supplemental pleadings (ECF Nos. 111, 119, 121), and the parties' arguments at the hearing, the court **DENIES** Defendants' Motion for Summary Judgment (ECF No. 44).

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

March 29, 2019
Columbia, South Carolina